UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DENNIS SCOTT FLORENCE, *et al.,*

                Plaintiffs,

    -against-                           1:20-CV-106 (LEK/CFH)

BASIL SEGGOS, Commissioner of the
New York State Department of
Environmental Conservation, *et al.*,

                Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiffs Dennis Scott Florence and Michael St. Jeanos commenced this action on January 31, 2020 alleging violations of their rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et. seq. ("Title VII"), 42 U.S.C. § 1981a, and 42 U.S.C. § 1983 against Basil Seggos, Chris Ballantyne, Marline Agnew, Bernard Rivers, and various John Doe defendants. See Dkt. No. 1 ("Complaint"). Plaintiffs filed an amended complaint on February 7, 2020. See Dkt. No. 4 ("Amended Complaint").

Presently before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 11 ("Motion to Dismiss"); 11-1 ("Defendants' Memorandum of Law"). Plaintiffs filed an opposition to Defendants' Motion and additionally moved to amend a second time. Dkt. Nos. 16 ("Opposition"); 16-1 ("Proposed Second Amended Complaint" or "Proposed SAC"). Defendants filed a reply. Dkt. No. 21 ("Reply"). For the reasons that follow, the Court grants Defendants' Motion to Dismiss and denies Plaintiffs' motion to amend as futile.

II.     BACKGROUND

A. Factual Allegations

The following facts, alleged in the Amended Complaint, are assumed to be true. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 76 (2d Cir. 2015).

The claims in this action revolve around a September 2018 decision by the New York State Civil Service Commission to de-classify the position of Director of Division of Law Enforcement ("DLE") in the New York State Department of Environmental Conservation ("DEC") and convert it from a competitive Civil Service position to a non-competitive position . Am. Compl. ¶¶ 23–24. At the time the DLE Director position was converted, Rivers was serving as the Acting DLE Director. Id. ¶ 17. Rivers had been serving as Acting DLE Director since March 2018, when Joseph Schneider, the previous DLE Director, retired. Id.

At some point before Schneider retired, a test for the DLE Director position had been administered. Id. ¶ 13. Around December 2017, a Civil Service list for the position of DLE Director was in existence and consisted only of individuals who had passed the test. Id. ¶ 15. All of the individuals on the list were Caucasian males. Id. ¶¶ 13, 15. Rivers, an African American, had failed the test and was not on the list. Id. ¶¶ 13, 22.

Immediately after Schneider announced his intention to retire in December 2017, DEC began interviewing candidates from the Civil Service list, including Plaintiffs, who were both employed at DEC. Id. ¶¶ 15–18. Although both Plaintiffs were called back for second interviews, neither was offered the DLE Director position. Id. ¶¶ 18, 25. By letter dated June 22, 2018, DEC management requested that the New York State Civil Service Commission de-classify the DLE Director position from a Civil Service position to a non-competitive position. Id. ¶ 19. One of the

2

reasons offered in support of the requested change was that it would broaden the pool of applicants and increase the potential for diversity. Id. ¶ 20. DLE staff learned of the Commission's decision to de-classify the position of DLE Director in October 2018. In documents approving the change, the Commission reminded DEC that it should use the approval to further minority promotions. Id. ¶ 24.

After the Civil Service list was abrogated, Rivers was the only additional person interviewed for the position of DLE Director. Id. ¶ 26. Rivers was appointed to the position of DLE Director on November 6, 2018. Id. ¶ 10.

Following Rivers' appointment to the position of DLE Director, Florence was so "offended, upset and disgusted" that he retired five years earlier than he had originally planned. Id. ¶ 29. St. Jeanos has continued to work at DEC, but, after filing a complaint with the New York State Division of Human Rights, he suffered the following adverse employment actions: "being threatened to have his office moved," "being treated differently than other command staff," and "being threatened with the creation of a new position in the division of law enforcement to which some of his duties would be transferred." Id. ¶ 30.

During all times relevant to the claims in this action, Seggos was DEC's Commissioner, Ballantyne was DEC's Deputy Commissioner for Public Protection, and Agnew was DEC's Director of Personnel. Id. ¶¶ 7–9.  Plaintiffs allege that Defendants (1) violated Plaintiffs' rights under Title VII by discriminating against them and engaging in retaliatory conduct; (2) violated Plaintiffs' constitutional rights under § 1983; and (3) violated Plaintiffs' rights under § 1981(a). Id. ¶¶ 1, 28–36.

**B. Proposed Second Amended Complaint**

Plaintiff requests to add the State of New York and DEC as defendants and add factual allegations via the Proposed Second Amended Complaint. See generally Opp'n; Proposed SAC. The Court briefly summarizes the new allegations below.

First, Plaintiffs add that Rivers' performance of his duties as Acting Director of DLE was inadequate because "he failed to comply with numerous requirements that the [P]laintiffs and others on the [C]ivil [S]ervice list were told would be expected of the successful candidate, including attendance at headquarters in Albany at least 40 hours per week and residing in Albany County to ensure immediate availability after hours." Proposed SAC ¶ 31.

Additionally, Plaintiffs seek to: (1) amend their Title VII claim so that it is asserted against DEC and the State of New York instead of Defendants, id. ¶ 37–40; (2) amend their § 1981 claim to plead a violation of Plaintiffs' equal rights under the New York State Civil Service Law instead of pleading a claim for adverse employment actions under § 2000(e)(2)(a) and other Title VII provisions, id. ¶¶ 42–45; (3) amend their § 1983 claim to plead a violation of Plaintiffs' procedural due process, substantive due process, and equal protection rights under the Fifth and Fourteenth Amendments, id. ¶¶ 47–50; and (4) add a claim under the principles enunciated in Monell v. Department of Social Services, 436 U.S. 658 (1978), Am. Compl. ¶¶ 52–55.

## III.   LEGAL STANDARD

**A. Motion to Dismiss**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v.

4

Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

### B.  Motion to Amend

After the time to amend as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A court should grant leave "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman v. Davis, 371 U.S. 178 (1962).

5

Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000); see also Couloute v. Ryncarz, No. 11-CV-5986, 2012 U.S. Dist. LEXIS 20534, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting Monahan, 214 F.3d at 283). However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008); Monahan 214 F.3d at 283.

An amendment is futile if the proposed claim could not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)).

## IV. DISCUSSION

The Court grants Defendants' Motion to Dismiss in its entirety and denies Plaintiffs' motion to amend as futile.

### A. Title VII Claim

"Individuals are not subject to liability under Title VII." Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam). This is so regardless of whether the defendants are being sued in their individual or official capacities. See Garcia v. New York State, No. 05-CV-5138, 2005 WL 2581926, at *2 (S.D.N.Y. 2005) ("Courts within [the Second Circuit] have also generally found that individuals may not be sued in their official capacities under Title VII."). Therefore, Plaintiffs' Title VII claim against Defendants, who are all individuals, is dismissed.

6

**B.  Section 1983 Claim**

To state a claim under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the deprivation was committed by a person acting under the color of state law. See Vega, 801 F.3d at 87–88. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

Plaintiffs do not allege that Defendants violated a specific right, privilege, or immunity secured by the Constitution or federal laws. For this reason, Plaintiffs' § 1983 claim is dismissed.

**C.  Section 1981 Claim**

To establish a claim under § 1981, a Plaintiffs must allege facts supporting the following elements: (1) Plaintiffs are members of a racial minority; (2) Defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities (i.e., the right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens). 42 U.S.C. § 1981; see Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). As for the first prong, the Supreme Court has held that § 1981 also applies to "racial discrimination against white persons." Maynard v. Montefiore Medical Center, No. 18-CV-8877, 2021 WL 396700, at *5 (S.D.N.Y. Feb. 4, 2021) (quoting McDonald v. Santa Fe Trial Transp. Co., 427 U.S. 273, 287 (1976)). "A plaintiff alleging racial . . . discrimination . . . must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf

7

v. Vassar Coll., 35 F.3d 709, 713 (2d Cir. 1994). Additionally, the Supreme Court has recently

held that to prevail on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that,

but for race, [he] would not have suffered the loss of a legally protected right." Comcast Corp. v.

Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020). Accordingly, it is

insufficient to merely plead that race was a motivating factor in the discriminatory action. Id. at

1017–18.

Plaintiffs' Amended Complaint does not meet the initial pleading standard. Plaintiffs do

not allege any acts by Defendants that constitute intentional discrimination. Other than passing

the test that was no longer required for the de-classified DLE position, Plaintiffs do not allege

that they were any more qualified than Rivers for the de-classified DLE position. In addition,

Plaintiffs do not allege any other acts that could lead to an inference of discriminatory intent.

Because Plaintiffs do not allege that "but for" Rivers' race, one of them would have become DLE

Director, Plaintiffs' § 1981 claim is dismissed. See Avent v. Platinum Plus Auto Protection, No.

19-CV-1494, 2021 WL 706643, at *5 (N.D.N.Y. Feb. 23, 2021) (dismissing a § 1981 claim

where the plaintiff failed to plead specific facts from which the court could infer that but for the

plaintiff's race, he would not have suffered an adverse action).

### D.  Proposed SAC

As pointed out in Defendants' Reply, Plaintiffs' proposed changes in their Proposed

Second Amended Complaint would not survive a motion to dismiss as a matter of law.

Therefore, Plaintiffs' motion to amend is denied as futile.

8

1. *Proposed Title VII Claim*

In the Proposed Second Amended Complaint, Plaintiffs seek to assert their Title VII claim against the DEC and the State of New York instead of against the currently listed individual Defendants. Despite the fact that Plaintiffs now seek to assert this claim against state entities, the proposed claim is still insufficient to survive a motion to dismiss. To state a claim for discrimination under Title VII, Plaintiffs must plausibly allege that (1) their employer took adverse action against them, and (2) Plaintiffs' race, color, religion, sex, or national origin was a motivating factor in the employment decision. See Vega, 801 F.3d at 87. In the context of a failure to promote claim, Plaintiffs must allege (1) that they are a member of a protected class; (2) that they applied for a promotion to a position for which they were qualified; (3) that they were rejected for the position; and (4) after this rejection, the position was filled by someone outside of the protected class who was similarly or less well qualified than Plaintiffs, or the employer kept the position open and continued to seek applicants. Dacier v. Reardon, No. 17-CV-418, 2018 U.S. Dist. LEXIS 70982, at *6–8 (N.D.N.Y. Apr. 27, 2018) (Kahn, J.).

Plaintiffs' Proposed Second Amended Complaint does not allege sufficient facts from which it can be plausibly inferred that Rivers was similarly or less qualified than Plaintiffs for the DLE Director position. Plaintiffs do not allege any facts setting out the qualifications required for the DLE Director once the position was de-classified and a test was no longer mandated. In addition, Plaintiffs do not allege any facts setting out their own qualifications for the DLE Director position. Without alleging any facts from which it can be inferred that Plaintiffs were similarly or more qualified than Rivers for the DLE Director position that Rivers was awarded, Plaintiffs' Title VII claims set out in the Proposed Second Amended Complaint would not

survive a motion to dismiss. See Hodges v. Sessions, No 17-CV-4273, 2018 WL 4232918, at *5 (S.D.N.Y. Sept. 5, 2018) (dismissing a failure to promote claim where the plaintiff did not provide any allegations that a promotion he applied for was filled by someone who was similarly or less qualified, nor did plaintiff provide any other allegations evincing discriminatory animus).

### 2. Proposed § 1983 Claims

Plaintiffs seek to amend their § 1983 claim to allege violations of their procedural and substantive due process rights and their equal protection rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.

### a. Equal Protection Claim

The Equal Protection Clause protects public employees from various forms of discrimination including disparate treatment on the basis of race. "Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." Demoret v. Zegarelli. 451 F.3d 140, 149 (2d Cir. 2006). Because analysis of an Equal Protection Clause claim and a Title VII claim for employment discrimination is similar, Plaintiff's proposed Equal Protection Clause claim would not survive a motion to dismiss for the same reasons as their proposed Title VII claim.

### b. Due Process Claims

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To state a claim under the Due Process Clause, Plaintiffs must first allege that they possess a liberty or property interest protected by the Constitution or federal statutes. Id., at *19.

Plaintiffs argue that rights under the New York State's Civil Service Law "have been held to be a constitutionally protected property interest." Opp'n at 14. However, Plaintiffs do not identify the specific rights under the New York Civil Service Law that have been implicated. Moreover, the harm Plaintiffs identify is the fact that the DLE Director position was de-classified from a competitive position to a non-competitive one. Proposed SAC ¶ 48. The decision to de-classify the position rested with the Civil Service Commission and not Defendants. Plaintiffs do not address the fact that they failed to exhaust their administrative remedies by appealing the Civil Service Commission's decision to de-classify the DLE Director position. As such, it is inappropriate for them to seek to challenge the Commission's decision through the instant action. See Clark v. Dominique, 798 F. Supp. 2d 390, 401 (N.D.N.Y. 2011) (holding that plaintiff may not maintain a civil action alleging a constitutional deprivation of property without due process where plaintiff failed to exhaust her administrative remedies under the New York State Civil Service Law). Lastly, the Proposed Second Amended Complaint does not allege personal involvement by Defendants in the alleged deprivation of Plaintiffs' due process rights. See Rosa R. Connelly, 889 F.2d at 437 (Affirming the dismissal of a claim against the defendant because the plaintiffs did not allege that the defendant was "directly and personally responsible for the purported unlawful conduct."). For these reasons, Plaintiffs' § 1983 due process claims would not survive a motion to dismiss.

c.  Monell Claim

Lastly, Plaintiffs seek to plead a Monell claim against Defendants. To plead a § 1983 claim against a municipality, the plaintiff must allege facts suggesting that the municipality maintained a particular policy or custom that caused a deprivation of constitutional rights.

11

_Monell_, 436 U.S. at 694. Here, Plaintiffs do not assert their _Monell_ claim against a municipality.
For this reason, Plaintiffs' _Monell_ claim would not survive a motion to dismiss.

> ### 3. *Proposed § 1981 Claim*

Plaintiffs seek to amend their § 1981 claim to allege a violation of the New York State
Civil Service Law.  They claim that their § 1981 claim is sufficiently pled for the same reasons as
their § 1983 claims. Opp'n at 19.  For the reasons discussed in Part IV(D)(2) of this opinion,
Plaintiff's proposed factual allegations do not lead to a plausible inference of discriminatory
intent from Defendants. For this reason, Plaintiffs' proposed § 1981 claim would not survive a
motion to dismiss.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 11) is **GRANTED in its
entirety**; and it is further

**ORDERED**, that Plaintiffs' Amended Complaint (Dkt. No. 4) is **DISMISSED**; and it is
further

**ORDERED**, that Plaintiffs' motion to amend (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED**, that the Clerk is directed to close this case; and it is further

**ORDERED**, that the clerk serve a copy of this Memorandum-Decision and Order on all
parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:       March 11, 2021
                Albany, New York

Lawrence E. Kahn
U.S. District Judge