**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────────────

DENNIS SCOTT FLORENCE, et al.,

                Plaintiffs,

   v.

NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION, et al.,

                Defendants.

No. 1:20-CV-00106
(LEK/CFH)

───────────────────────────────────────

**APPEARANCES:**

James B. Tuttle, ESQ.
939 Route 146 - Suite 800
Clifton Park, New York 12065
Attorney for plaintiffs

Attorney General for the
State of New York
The Capitol
Albany, New York 12224
Attorneys for defendants

**OF COUNSEL:**

JAMES B. TUTTLE, ESQ.

LAUREN ROSE EVERSLEY, ESQ.
Assistant Attorney General

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION & ORDER

Presently pending before the Court is plaintiffs' Dennis Scott Florence and Michael St. Jeanos ("plaintiffs") motion to compel defendants, the New York State Department of Environmental Conservation ("DEC") and the State of New York ("defendants"), to produce discovery pursuant to Rule 37 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and N.D.N.Y. Local Rules 7.1 and 37.1. See Dkt. No. 50. Defendant DEC opposes the motion. See Dkt. No. 56. For the following reasons, plaintiffs' motion to compel is granted.

## I. Background

For purposes of this motion, the Court will assume the parties' familiarity with the facts, providing only a brief summation of the factual and procedural background.[1]

### A. Plaintiffs' Assertions

"This is a Title VII action alleging reverse discrimination." Dkt. No. 50-1 at 1.[2] "Plaintiffs are two of eight white male employees of the New York State Department of Environmental Conservation who were on a civil service list for the position of Director of Law Enforcement (hereinafter 'DLE') in the [DEC]." Id. at 1-2. The position was "a classified position in the New York State Civil Service System, meaning that an appointment to that position could only be made from among the top three candidates by test score on the Civil Service List." Id. at 2. The plaintiffs "were among the top three scorers on the Civil Service List." Id. "Another employee of the DEC, Bernard Rivers, who is a black male, also took the test for the [DLE] position . . . but failed the exam[.]" Id. "Therefore[,] his name was not on the Civil Service List and he was not a lawful candidate for the position." Id.

"On March 31, 2018 the incumbent . . . DLE, Joe Schneider, retired, thereby bringing about the need to fill the position." Dkt. No. 50-1 at 2. "DEC began the process of interviewing the candidates on the Civil Service List, but it also surreptitiously began the process of declassifying the position through the New York State Civil Service Commission." Id. "Bernard Rivers was named Acting Director pending a permanent appointment to the position." Id. DEC explained that, if they named "one of

---

[1] A more thorough recitation of the factual allegations and procedural history can be found in plaintiffs' amended complaint and defendants' answer. See Dkt. Nos. 30, 42.
[2] Citations are to the pagination generated by CM/ECF, located in the header of each page.

2

the candidates on the Civil Service List [as] Acting Director," that "might give that candidate an unfair leg up over the other candidates[,]" so "it was fair to appoint Bernard Rivers as Acting Director because he was not a lawful candidate, having failed the test." Id.  However, "the position was [ultimately] declassified by the Civil Service Commission, which meant that anyone, including the 8 people on the Civil Service List, acting director Rivers or anyone else who met the now-reduced minimum qualifications for the position could be permanently appointed to the position."  Id.

On April 4, 2019, plaintiffs "commenced a proceeding before the New York State Division of Human Rights [('DHR'),] alleging that [d]efendants had violated the New York State Human Rights Law by making race-based employment determinations in declassifying the [DLE] position . . . and in naming Bernard Rivers to the position[.]" Dkt. No. 50-1 at 3; see Dkt. No. 56-1 at 7.  "There is no discovery process in DHR proceedings: the DHR conducts its own investigation, but does not share the results of its investigations with Complainants."  Dkt. No. 50-1 at 3.  On September 18, 2019, DHR held a hearing, where "Basil Seggos, who was then and is now the Commissioner of Environmental Conversation[,] testified . . . , as did Chris Ballantyne, who was then and is now Deputy Assistant Commissioner of DEC assigned to the Law Enforcement Division."  Id.  "Both [Seggos and Ballantyne] were directly involved in the process that resulted in Bernard Rivers being appointed to the position of [DLE] over either of the two Plaintiffs."  Id.  "[T]here was no transcript made of the DHR hearing"; however, plaintiffs' counsel took notes.  Id.  According to these notes, when Ballantyne "was asked whether he had any issues with Scott Florence as a candidate for the position of DLE[,] [h]e stated that he had concerns . . . as a result of [Florence's] involvement in a promotion of

3

Officer Peinkofer in Region 2[,]" which "demonstrated a lack of leadership." Id. Seggos then testified that "he had recently heard about the 'Peinkofer matter' and [ ] Florence's involvement in it[,]" and "stated that what he heard demonstrated a lack of sensitivity to an important issue related to a threshold issue on judgment that he (Florence) remained a candidate, but not after the reclassification because of the 'Peinkofer incident.'" Id. at 3-4.[3]

"In denying [p]laintiffs' DHR complaints, the DHR . . . mentioned the Peinkofer incident as a reason to deny [p]laintiffs' claims," stating,

> The investigation revealed that executive staff learned that Complainant [Dennis Scott Florence], while commanding officer of DLE BECI had determined to promote a male ECO to BECI who had previously and recently been subject to discipline and demotion after allegations of sexual harassment against him were substantiated. Although this did not violate any specific policies, executive staff felt this demonstrated a serious lapse in judgment and demonstrated a lack of sensitivity to a very significant issue.

Dkt. No. 50-1 at 4; Dkt. No. 56-1 at 9. "Although the name Peinkofer is not referenced in the determination," plaintiffs believe "this was clearly a reference to the Peinkofer matter, especially in light of the contents of [plaintiffs' counsel's] notes previously set forth." Dkt. No. 50-1 at 4.

## B. Relevant Procedural History

On January 31, 2020, plaintiffs commenced this action alleging that defendants violated their rights under Title VII of the Civil Rights Act of 1964. See Dkt. No. 1; see also Dkt. No. 30 ("Am. Compl."). On October 18, 2022, plaintiffs served a request for production of documents seeking, as relevant here, "[a]ll documents regarding the

---

[3] Defendants maintain that "Mr. Peinkofer was not directly referenced by name by DEC employees at any point during the DHR hearing, and was certainly not named in the DHR's decision." Dkt. No. 56-1 at 2.

demotion of Environmental Conservation Lieutenant Robert Peinkofer," and "[a]ll documents regarding the promotion of Environmental Conservation Lieutenant Robert Peinkofer to Environmental Conservation Investigator, including but not limited to the Affirmative action justification letter and all sign off sheets approving his promotion." Dkt. No. 50-2 at 17-18; see Dkt. No. 50-1 at 5, ¶10; see also Dkt. No. 56 at 1-2, ¶4.  On December 21, 2022, defense counsel responded to both requests by stating:

> Defendants object to this interrogatory because it is vague, ambiguous, overly broad, seeks information that is not relevant to the claims or defenses in this action, not proportional to the needs of litigation as it pertains to an individual who is not a party to this action and was not involved in the promotional process for Bernard Rivers.  This request further represents a fishing expedition wholly unrelated to the litigation.  See Walsh v. Top Notch Home Designs Corp., No. CV2005087GRBJMW, 2022 WL 3300190, at *7 (E.D.N.Y. Aug. 11, 2022) ("[A] fishing expedition is indeed permissible and legitimate when the information sought pertains to the subject matter of the case and seems reasonably calculated that discovery would lead to permissible evidence as to claims or defenses.  Although this requirement 'has been construed broadly,' the information sought must be relevant to an actual claim or defense." (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (denying discovery of the list of potential plaintiffs in a class action suit because the evidence was not reasonably calculated to be admissible to support any raised claim or defense)).

Dkt. No. 50-3 at 18-19; see Dkt. No. 50-1 at 5, ¶11; see also Dkt. No. 56 at 2, ¶4.  "On January 19, 2023, [plaintiffs' counsel] wrote to defense counsel setting forth [his] position on the Peinkofer matter and why [he] believed the documents requested are relevant to this litigation and should be produced."  Dkt. No. 50-1 at 5, ¶12; see Dkt. No. 50-4 at 2.  On January 27, 2023, defense counsel responded "by advising that [d]efendants were standing by the objections set forth in their responses."  Dkt. No. 50-1

5

at 5, ¶13; see Dkt. No. 50-5 at 2.  "On January 30, 2023, [plaintiffs' counsel] wrote to defense counsel advising that [he] would accept redacted copies of the requested documents."  Dkt. No. 50-1 at 5, ¶14; see Dkt. No. 50-6 at 2.  "On February 2, 2023 defense counsel responded to [plaintiffs' counsel] advising that they were not willing to change their position."  Dkt. No. 50-1 at 5, ¶15; see Dkt. No. 50-7 at 2.

Plaintiffs' counsel requested a conference with the Court to "discuss this matter further."  Dkt. No. 50-1 at 6, ¶16; see Dkt. No. 47.  On February 24, 2023, during such conference, the parties discussed a possible compromise and were given two weeks to consider the viability of that compromise.  See Dkt. No. 50-1 at 6; see also Dkt. No. 56 at 3.  On March 10, 2023, this Court conducted a follow-up conference but did not reach a resolution.  See Dkt. No. 50-1 at 6; see also Dkt. No. 56 at 3-4.  Plaintiffs filed this motion to compel on March 17, 2023.  See Dkt. No. 50.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Rule 26 tasks the Court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.  "A district court has broad latitude to determine the scope of discovery and to manage the discovery process."  EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012) (citing In

re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 103 (2d Cir. 2008).  "[F]ollowing a good-faith effort to meet and confer, upon to all parties notice, 'a party may move for an order compelling disclosure or discovery'" pursuant to Rule 37.  Siano Enders v. Boone, No. 19-CV-948 (BKS/CFH), 2021 WL 3471558, at *2 (N.D.N.Y. Aug. 6, 2021) (quoting FED. R. CIV. P. 37(a)).  "Motions to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district court.'"  Harris v. Bronx Parent Hous. Network, Inc., No. 18-CV-11681, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (quoting United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)).

"The party seeking discovery bears the initial burden of proving the discovery is relevant[.]" Citizens Union of City of N.Y. v. Att'y Gen. of N.Y., 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (citing Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 284 F.R.D. 132, 135 (S.D.N.Y. 2012) (citations omitted)).  During the pre-trial discovery stage, "[t]he relevance standard is construed broadly 'to encompass any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case.'"  Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co., No. 09-CV-835 (DNH/TWD), 2012 WL 12896163, at *2 (N.D.N.Y. Dec. 21, 2012) (quoting Oppenheimer Fund, Inc., 437 U.S. at 351); see also Cohen v. Altman, No. 19-CV-274 (TJM/TWD), 2021 WL 6106432, at *1 (N.D.N.Y. Jun. 4, 2021) ("Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial.").  "Once any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper." Condit v. Dunne, 225 F.R.D. 100, 106 (S.D.N.Y. 2004) (citation and internal quotation marks omitted). "Generally, discovery is only limited when 'sought in bad faith, to harass or oppress the

7

party subject to it, when it is irrelevant' or privileged." Id. (quoting Melendez v. Greiner, No. 01-CV-7888 (SAS/DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003)) (additional citation omitted).

### III.  Arguments

Plaintiffs request "[a]ll documents regarding the demotion of Environmental Conservation Lieutenant Robert Peinkofer," and "[a]ll documents regarding the promotion of Environmental Conservation Lieutenant Robert Peinkofer to Environmental Conservation Investigator, including but not limited to the Affirmative action justification letter and all sign off sheets approving his promotion." Dkt. No. 50-2 at 17-18.  Plaintiffs assert that,

> [u]nder well established principles of Title VII litigation, the burden rests initially on the plaintiff to allege unlawfully discriminatory animus and/or conduct on the part of the defendants.  If that burden is met, it shifts the burden to the defendants to present non-discriminatory reasons for their conduct, which then shifts the burden back to the plaintiff to establish that the reasons offered by the defendants are in fact pretextual.  That is precisely where this case is right now, and the plaintiffs are entitled to discovery of facts and documents that may assist them in meeting their burden of proving that the given reasons for objection to their candidacy were mere pretexts.  This is a specifically targeted request, and there is no merit to the defendants' position that this is a fishing expedition.

Dkt. No. 50-1 at 7.  Plaintiffs argue that "representatives of the defendant have by their testimony to the New York State Division of Human Rights made all aspects of the Peinkofer matter directly relevant to issues in this case." Id. at 6.  Plaintiff explains that both Seggos and Ballantyne "testified before the DHR that . . . Florence's involvement in the Peinkofer matter demonstrated a lack of leadership and judgment that rendered his

8

candidacy inferior to that of the single minority candidate Bernard Rivers, and the DHR accepted . . . those representations . . . in reaching its determination." Id.  Florence has submitted an affidavit in support of this argument, in order to "demonstrate[ ] that all aspects of the Peinkofer matter . . . took place in accordance with [DEC protocols] and in no way demonstrated a lack of leadership or judgment on his part and that the documents sought by this application will bear strongly on these issues." Id.; see Dkt. No. 50-8.  Plaintiffs contend that "[a]n appropriate redaction of all responsive documents will adequately protect the privacy interests of those individuals not involved in this litigation." Id.

Defendants "maintain[ ] that their December 21, 2022 and January 27, 2023 responses contained proper objections pursuant to Rule 34(b)(2)." Dkt. No. 56 at 4-5.  As noted, defendants contend that plaintiffs' request is "vague, ambiguous, overly broad," irrelevant, not proportional as it relates to a nonparty who "was not involved in the promotional process for Bernard Rivers," and represents a fishing expedition.  Dkt. No. 50-3 at 18-19.  Defendants argue that, because "Peinkofer is not a party to this action," "an employer has an interest in maintaining the privacy of its employee's personnel records." Dkt. No. 56 at 5 (citing Kozak v. Off. Depot, Inc., No. 1:16-CV-943 (LJV/JJM), 2020 WL 12957618, at *1 (W.D.N.Y. June 22, 2020), aff'd, 2020 WL 5757183 (W.D.N.Y. Sept. 28, 2020)).  "[T]o demonstrate further agency concerns with disclosure of" an employee's personnel records, defendants submit a declaration from Mark Sanza, Deputy General Counsel and Bureau Chief for Regional Affairs and Litigation for the DEC.  Dkt. No. 56 at 5; see Dkt. No. 56-1.  Defendants contend that "[a]ll objections to demands have been made in good faith." Dkt. No. 56 at 5.

9

## IV.  Discussion

"In establishing [their] entitlement to the requested discovery, it is plaintiff[s'] 'burden to show how the requested records are relevant, material and proportional to the claims made.'"  Kozak, 2020 WL 12957618, at *1 (quoting O'Garra v. Northwell Health, No. CV-16-2191 (DRH/AYS), 2018 WL 502656, at *5 (E.D.N.Y. Jan. 22, 2018)).  Additionally, "[t]he party seeking the discovery must make a prima facie showing, that the discovery sought is more than merely a fishing expedition."  Huayuan Chen v. Stony Brook Univ., No. CV-15-6698 (JMA/AYS), 2018 WL 1368031, at *4 (E.D.N.Y. Mar. 16, 2018)).  "Courts typically apply more liberal civil discovery rules in employment discrimination cases, giving plaintiffs broad access to employers' records in an effort to document their claims."  Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 557, 562 (S.D.N.Y.  2013) (internal quotation marks and citation omitted); see Mitchell v. Nat'l R.R. Passenger Corp., 208 F.R.D. 455, 459 (D.D.C. 2002) ("As Title VII cases are particularly hard to prove in the absence of a proverbial smoking gun, such as a discriminatory comment made by a hiring official, discovery in these cases is necessarily broad.  Limits on discovery as to scope, time, and geography must be carefully constructed and premised on the notion that plaintiffs have a right to seek discovery on similarly motivated discriminatory acts if it is likely that a finder of fact would conclude that those other acts are probative of the intention or motivation of which the plaintiff has complained.").

"In the context of requests for non-party personnel records, '[c]ourts have recognized that an employer has an interest in maintaining the privacy of its employee's

personnel records.'" Kozak, 2020 WL 12957618, at *1 (quoting McDonnell v. First Unum Life Ins. Co., No. 10-CV-08140 (RPP), 2012 WL 13933, at *2 (S.D.N.Y. Jan. 4, 2012)); see Duling v. Gristede's Operating Corp., 266 F.R.D. 66, 73-74 (S.D.N.Y. 2010) (personnel files, especially those of non-parties, are confidential by their nature). This is because

> the very act of disclosing an employee's sensitive and personal data is a highly, and frequently, an unnecessarily intrusive act—whether or not that disclosure is governed by the terms of a Confidentiality Order. The intrusiveness of the act rests in disclosure to anyone, and the fact that the information may not be openly publicized brings little comfort to the co-employee, whose most private confidences are needlessly divulged. In our view, to order the production of such non-party employee files—even under the restrictions of a Protective Order—is not a step which the Court should lightly undertake.

Kozak, 2020 WL 12957618, at *1 (quoting Raddatz v. Standard Register Co., 177 F.R.D. 446, 447-48 (D. Minn. 1997)); see Sidari v. Orleans Cnty., 180 F.R.D. 226, 232 (W.D.N.Y. 1997) (denying motion to compel absent showing of specific need for information contained within personnel files). Thus, courts should "make a proper attempt to balance the plaintiffs' desire for full disclosure of relevant information against the defendant's desire to preserve the privacy of its employees." Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 601 (2d Cir. 1986).

"To obtain non-party personnel records, the requesting party must demonstrate the particular relevance of the personnel records to the issue." Ochoa v. Progressive Pipeline Constr., LLC, No. CV SA-13-CA-122-FB, 2014 WL 12873122, at *2 (W.D. Tex. Jan. 15, 2014) (citing Clemons v. Dollar Gen. Corp., No. 2:09-CV-64, 2010 WL 1994809, at *5 (N.D. Miss. May 18, 2010)); see Mills v. Steuben Foods, Inc., No. 19-

11

CV-1178WMS (F), 2023 WL 179579, at *8 (W.D.N.Y. Jan. 13, 2023) ("[C]ourts have held that discoverability of [personnel] files depend[s] on the potential relevance of the [specific] personnel file . . . [to the] plaintiff's specific claim") (citing <u>Osucha v. Alden State Bank</u>, No. 17-CV-1026V, 2019 WL 6783289, at *4 (W.D.N.Y. Dec. 12, 2019), and <u>Gorzynski v. JetBlue Airways Corp.</u>, No. 03-CV-0774E (SC), 2005 WL 8156622, at *4-6 (W.D.N.Y. Aug. 4, 2005)).  Here, plaintiffs argue that "representatives of the defendant have by their testimony to the New York State Division of Human Rights made all aspects of the Peinkofer matter directly relevant to issues in this case." Dkt. No. 50-1 at 6.  To support his request "to compel the production of all documents relating to the promotion, demotion, and ultimate promotion to a different position of Conservation Officer Robert Peinkofer in the Department of Environmental Conservation[,]" Florence declares,

> The documents we are seeking in discovery will establish that in 2014 I was the Acting Director of Law Enforcement and presided over the resignation /demotion of Officer Peinkofer for his use of inappropriate language with female staff and misuse of state equipment.  It will further show that my involvement in the promotion of Robert Peinkofer to the position of investigator in Buffalo, which was a non-supervisory position, was conducted as per DEC agency wide standard procedures as outlined above and approval by multiple layers of DEC staff above my rank.  That his promotion was approved by Director Joe Schneider and DEC's Affirmative Action and Personnel offices, all of which conducted or were involved in the internal affairs investigation that resulted in Peinkofer resignation in 2014.  I further respectfully submit that the documents will demonstrate that no part of my involvement in the Peinkofer matter demonstrated any lack of leadership or judgment on my part that would support the testimony of Deputy Assistant Commissioner Ballantyne or Commissioner Seggos at the DHR hearing and will demonstrate that the given reasons for their objections to my candidacy were in fact pretextual.

Dkt. No. 50-8 at 4-5, ¶11.

Defendants maintain that plaintiffs seek "information that is not relevant to [their] claims," and their request "is not proportional to the needs of litigation as it pertains to an individual who is not a party to this action and was not involved in the promotional process for Bernard Rivers." Dkt. No. 50-3 at 19. Defendants argue that "the only people who have made Mr. Peinkofer's records directly relevant to this action are Plaintiffs and their counsel." Dkt. No. 56-1 at 2. Defendants offer an affidavit from Mark Sanza in support of this argument, who declares,

> In my role as Bureau Chief for Regional Affairs and Litigation, including employee-relations matters, I was present at Plaintiff Florence's September 2019 DHR hearing. I did not take handwritten notes during that proceeding but based on my recollection of events, Mr. Peinkofer was not directly referenced by name by DEC employees at any point during the DHR hearing, and was certainly not named in the DHR's written decision. . . As indicated in [the decision], the person being referenced is wholly unnamed and anonymous and, therefore, protected from any negative inference or disclosure of identity.

Id. at 2. Sanza also explains the agency's document retention policy, and notes that "[t]he agency has no way of knowing whether Plaintiff Florence was involved in the promotion and/or demotion of Mr. Peinkofer in 2013 and 2014 because those kinds of records were destroyed pursuant to the agency's record tension policy, which only requires that records be kept for 7 years." Id. at 3. Sanza further states that

> [i]nsofar as Plaintiff Florence claims that he was not involved in the promotion of Mr. Peinkofer in 2018, it is quite possible that [Seggos and Ballentyne] misremembered the extent of Plaintiff Florence's involvement in the 2014 promotion and demotion. Such discrepancy does not without more, however, require the disclosure of a non-party's personnel records, but instead could be addressed through other

13

>  discovery tools such as interrogatories, or written deposition questions.

Id. at 4.

Although Sanza declares that Peinkofer remained "wholly unnamed" during the DHR hearing, he does not dispute that the matter discussed in the DHR decision involved Peinkofer.  Dkt. No. 56-1 at 2; see Dkt. No. 56-1 at 9 (explaining that "executive staff harbored . . . concerns regarding [Florence's] judgment and priorities" because he had "determined to promote a male [officer] who had previously and recently been subject to discipline and demotion after allegations of sexual harassment against him were substantiated").  Plaintiff's involvement in the "Peinkofer matter" was, allegedly, the reason that defendant DEC did not promote him to DLE; thus, the documents related to the promotion, demotion, and subsequent promotion of Mr. Robert Peinkofer are relevant.  See, e.g., Gunning v. New York State Just. Ctr. for Prot. of People With Special Needs, No. 1:19-CV-1446 (GLS/CFH), 2022 WL 783226, at *8 (N.D.N.Y. Mar. 15, 2022) ("Miranda, Forshaw, and Kiyonaga were allegedly 'involved in the decision to terminate' plaintiff's employment, and their communications concerning plaintiff and her complaints and termination are, therefore, relevant.").  Although defendants argue that plaintiffs' request presents an improper fishing expedition, the Court disagrees.  See Walsh v. Top Notch Home Designs Corp., No. CV-20-05087 (GRB/JMW), 2022 WL 3300190, at *7 (E.D.N.Y. Aug. 11, 2022) ("[A] fishing expedition is indeed permissible and legitimate when the information sought pertains to the subject matter of the case and seems reasonably calculated that discovery would lead to permissible evidence as to claims or defenses.  Although this requirement 'has been construed broadly,' the information sought must be relevant to an actual claim or

defense.") (quoting Oppenheimer Fund, Inc, 437 U.S. at 351).  Plaintiffs are requesting documents related to Peinkofer's promotion in 2013, demotion in 2014, and ultimate promotion in 2018, to establish that the reason defendant DEC objected to plaintiff Florence's candidacy was pretextual.  Cf. Croom v. W. Connecticut State Univ., No. 3:00-CV-1805 (PCD), 2002 WL 32503667, at *2 (D. Conn. Mar. 20, 2002) ("Having failed to identify what information is sought from the personnel files and how the information is sought is relevant to his claims, the request for production appears to be little more than a fishing expedition.").  As plaintiffs have met their initial burden, "the defendant, as the non-party, bears the burden of demonstrating, inter alia, that [plaintiffs'] request is not relevant." Ruran v. Beth El Temple of W. Hartford, Inc., 226 F.R.D. 165, 169 (D. Conn. 2005) (citing Kimbro v. I.C. Sys., Inc., No. 3:01-CV-1676 (DJS), 2002 WL 1816820, at *1 (D. Conn. July 22, 2002)).  "It has failed to do so." Id. (granting motion to compel the defendants to produce documents from the personnel files of other employees as the documents are "certainly relevant" to the plaintiff's discrimination claim).

"Defendants also filed objections stating that [plaintiffs' request] is overbroad [and] vague[; h]owever, these objections [are] not sufficiently specific to allow the court to ascertain the claimed objectionable character of the . . . [r]equest." Burns v. Imagine Films Ent., Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996) (explaining that objections claiming a request is vague or unduly burdensome is "not sufficiently specific" and "this type of general objection is not proper."); see Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash., 103 F.R.D. 52, 58 (D.D.C. 1984) ("General objections are not useful to the court ruling on a discovery motion.  Nor does a general objection fulfill [a party's] burden

to explain its objections."). The Court does not discern plaintiffs' request as vague or broad, but agrees with plaintiffs that the request is specifically targeted. "As defendants bear the burden of proving why plaintiff's request is overly burdensome or vague, and they have failed to provide an explanation, or indicate that they do not possess such evidence, plaintiff's motion to compel on this ground is granted." Gunning, 2022 WL 783226, at *13 (citing Am. Rock Salt Co., LLC v. Norfolk S. Corp., 228 F.R.D. 426, 439 (W.D.N.Y. 2004) ("Defendants asserted generalized objections . . . Defendants' [ ] objections to this request are overruled as without basis."). Accordingly, as requested, defendants should produce any documents related to Peinkofer's 2014 demotion, and Peinkofer's 2018 promotion. See Dkt. No. 50-2 at 17-18. Should no documents exist pursuant to agency retention policy, defendants are directed to supplement their response, under oath, explaining what efforts were taken to locate the requested documents. To the extent that defendants believe that there is confidential and personal information contained in these records, the parties are to confer on redactions[4] and, if necessary, execute a stipulation of confidentiality regarding this information.

## V. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiffs' motion to compel (Dkt. No. 50) be **GRANTED**; and it is further

---

[4] To the extent that the records contain information relating to Peinkofer's social security number, contact information, personal health status, or family information unrelated to the issues raised by this lawsuit, defendants may redact such information. See Smalls v. New York Hosp. Med. Ctr. of Queens, No. 13-CV-1257 (RRM), 2013 WL 12333083, at *5 n.19 (E.D.N.Y. Oct. 15, 2013).

**ORDERED**, that defendants produce to plaintiffs "[a]ll documents regarding the demotion of Environmental Conservation Lieutenant Robert Peinkofer"; and it is further

**ORDERED**, that defendants produce to plaintiffs "[a]ll documents regarding the promotion of Environmental Conservation Police officer Robert Peinkofer to environmental Conservation Investigator, including but not limited to the Affirmative action justification letter and all sign off sheets approving his promotion"; and it is further

**ORDERED**, that, to the extent that defendants believe there is confidential information contained in the requested records, the parties shall meet and confer on redactions and, if necessary, execute a stipulation of confidentiality regarding this information; and it is further

**ORDERED**, that, to the extent that defendants determine that the above-listed documents do not exist after a reasonable search, defendants shall supplement their response, explaining what efforts were taken to locate the requested documents; and it is further

**ORDERED**, that defendants shall comply with the orders directed herein within thirty (30) days of the date that this Memorandum-Decision & Order is entered; and it is further

**ORDERED**, that the Clerk serve this Memorandum-Decision & Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: March 14, 2024
   Albany, New York

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge